ORDERED.

**Dated:  June 07, 2019**

Cynthia C. Jackson
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
www.flmb.uscourts.gov

| | |
|---|---|
| In re: | Case No.: 6:15-bk-07397-CCJ<br>Chapter 11 |
| BUNKERS INTERNATIONAL CORP., | |
| | Jointly Administered[1] |
| Debtor. | |
| _____/ | |
| BUNKERS INTERNATIONAL CORP., | |
| Plaintiff, | Adv. Case No.: 6:15-ap-00169-CCJ |
| v. | |
| ORION HOLDINGS LIMITED | |
| Defendant. | |
| _____/ | |

<u>FINDINGS OF FACT AND CONCLUSIONS OF LAW</u>

This adversary proceeding came on for trial on April 3, 2019 to consider the complaint

filed by Plaintiff, Bunkers International Corp. ("Bunkers" or the "Debtor"), seeking to avoid and

recover pursuant to Sections 547 and 550 of the United States Bankruptcy Code certain preferential

transfers made to or for the benefit of the Defendant, Orion Holdings Limited ("Orion" or the

"Defendant"). The Defendant did not appear at trial. The Court, having taken evidence, including the proffered testimony of Robert Morrison as the liquidating agent of the Debtor (the "Liquidating Agent"), and considered the record in this case, awards judgment in favor Plaintiff. The Court makes the following findings of fact and conclusions of law.

### **Findings of Fact**

1.      This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 157(a), 157(b), and 1334(e), and the Order of the United States District Court for the Middle District of Florida referring all cases and proceedings under the Bankruptcy Code in this District to the Bankruptcy Court. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      On August 28, 2015 (the "Petition Date"), Debtor filed a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code commencing the above-captioned bankruptcy case (the "Bankruptcy Case").

3.      On September 29, 2015, the United States Trustee for the Middle District of Florida appointed a statutory committee of creditors holding unsecured claims (the "Committee"), and on September 30, 2015, Orion was appointed to serve on the Committee.

4.      On October 21, 2015, Orion filed a proof of claim asserting a general unsecured claim in the amount of $1,022,815.00. Orion's proof of claim is designated as Claim No. 26 in the Bankruptcy Case (the "Claim"). At Trial, the Claim was admitted into evidence as Plaintiff's Exhibit No. 16, without objection.

5.      On December 8, 2015, Bunkers filed the Complaint seeking (i) the avoidance of certain transfers made to Orion within 90 days prior to the Petition Date (Count One); (ii) the recovery of all avoided transfers made to Orion (Count Two); and (iii) the disallowance of Orion's Claim (Count Three). Orion filed its answer to the Complaint on February 12, 2016 (the

"Answer"), and asserted certain affirmative defenses including the ordinary course of business and new value defenses set forth in 11 U.S.C. § 547(c). The Answer was admitted into evidence at Trial without objection as Plaintiff's Exhibit No. 1.

6.      On February 9, 2016, this Court entered its Order Approving the Joint Plan of Liquidation, as Modified, submitted by Bunkers International Corp., Atlantic Gulf Bunkering, LLC and Dolphin Marine Fuels, LLC (the "Confirmation Order"), pursuant to which the Court confirmed Bunkers' Plan of Liquidation (the "Plan"). The Plan provided that the Liquidating Agent would assert and prosecute all retained assets and causes of action transferred to the Liquidating Debtors.

7.      Following confirmation of the Debtor's Plan, the Liquidating Agent assumed custody and control of and reviewed the Debtor's books and records, including its financial and accounting records, which records included the Debtor's bank statements, financial statements, account ledgers and wire transfer reports. The Liquidating Agent also reviewed pending litigation and claim objections and assessed the collectability of the remaining assets of the Debtor, including potential recoveries from preference litigation.

8.      During the course of his analysis of transactions occurring between Friday, May 29, 2015 and Thursday, August 27, 2015 (the "Preference Period"), the Liquidating Agent discovered that the Debtor wire transferred $1,100,000.00 to Orion in twelve (12) unequal payments beginning on June 17, 2015 and ending on July 16, 2015 (the "Preferential Payments"). The Preferential Payments are identified in the document entitled "Detailed Trial Balance for 2015 of Bunkers International Corp." which document was admitted into evidence at trial as Plaintiff's Exhibit No. 2.

9.      The Preferential Payments were wired from Debtor's bank account at PNC Bank (account number ending: 3477) as set forth in the wire transfer report admitted into evidence at Trial as Plaintiff's Exhibit No. 5, and the Corporate Business Account Statements for June and July 2015, which were also admitted into evidence at Trial as Plaintiff's Exhibit Nos. 6 and 7. As such, the Preferential Payments were property of the Debtor's estate.

10.     The Preferential Payments stem from an agreement entered into between the parties on April 15, 2015, which agreement is evidenced by (i) a proforma invoice prepared by Bunkers and issued to Defendant for $2,000,000,00 dated April 15, 2015 (Plaintiff's Exh. No. 3); (ii) an invoice prepared by Defendant and issued to Bunkers for $2,075,000.00 dated April 16, 2015 (Plaintiff's Exh. No. 4); and (iii) a demand letter from Defendant to Bunkers, which letter outlines the terms of the parties' April 15, 2015 agreement (Plaintiff's Exh. No. 8). Plaintiff's Exhibits 3, 4 and 8 were admitted into evidence at the Trial without objection.

11.     Pursuant to the parties' April 15, 2015 agreement (the "Lift Agreement"), Defendant would pre-pay $2,000,000.00 to Bunkers for fuel from the Debtor's facilities in Cartegena, Colombia, and any amount of fuel the Defendant did not to lift from Bunkers' facilities, the Debtor had to repay Defendant at the end of the contract period of 60 days. (Plaintiff's Exh. Nos. 3 and 8).

12.     As part of the Lift Agreement, the Defendant agreed to finance the Debtor's cargo requirements for $2,075,000, which amount was to be paid on or before June 14, 2015 as set forth in Defendant's April 16, 2015 invoice. (Plaintiff's Exh. Nos. 4 and 8). Defendant did not lift any fuel from the Debtor's facilities, and Bunkers did not pay $2,075,000 by June 14, 2015 as required under the Lift Agreement. Instead, Bunkers remitted payment after the June 14th due date and not

according to the terms of the Lift Agreement, the customary practices between the parties or the terms customarily accepted in the bunkering industry.

13.     It was during the Preference Period that Defendant engaged in unusually aggressive collection activity, which activity prompted Bunkers to trickle in payments to Defendant beginning after the June 14, 2015 due date specified in the Lift Agreement. This state of affairs is acknowledged in a demand letter dated August 12, 2015, in which Defendant's prior counsel specifically noted that Defendant had accepted partial payments from Bunkers after the June 14, 2015 due date. (Plaintiff's Exh. No. 8 at p. 1). In addition, Defendant's prior counsel admits that Orion was aware Bunkers did not have funds to pay the entire debt during June, July and August 2015, and was waiting for future funding to pay back the debt. (Plaintiff's Exh. No. 8 at p. 2). Defendant's prior counsel also threatened to commence litigation against Bunkers if the debt owing under the Lift Agreement was not paid in full by August 18, 2015. (Plaintiff's Exh. No. 8 at p. 2).

14.     The Court further finds that Bunkers was insolvent during the Preference Period. At Trial, Bunkers presented evidentiary support for this finding in the form of balance sheets from the period of May 2015 through August 2015. (Plaintiff's Exh. Nos. 9, 10, 11 and 12). These balance sheets reflect liabilities that exceed assets for every month during the Preference Period. In addition, the Debtor's schedules (Doc. No. 59) support a finding that Bunkers was insolvent throughout the 90-day period prior to the Petition Date. The schedules, executed under the penalty of perjury by the Debtor's president and CEO (John Canal), reflect that liabilities of the Debtor in the amount of $36,067,012.40 exceeded its assets in the amount of $23,662,121.50. Accordingly, the Debtor's schedules also reflect that the Debtor was insolvent as of the Petition Date.

15.     The Court finds that because it received the Preference Payments, Orion received $1,100,000.00 on a $2,122,815.00 claim, a return of 52%. As set forth in the Liquidation Analysis prepared in conjunction with the Plan, Orion would have received a 0.00% return on its Claim. (Plaintiff's Exh. No. 13). Further, based upon a post-confirmation liquidation analysis prepared by Mr. Morrison, which analysis is based on received and anticipate recoveries by the Debtor's estate, on its best day Orion would receive a 3.00-4.00% return on its Claim. (Plaintiff's Exh. No. 14). Despite Debtor's demand that the Preference Payments be returned (Plaintiff's Exh. No. 15), Orion has not remitted the amounts it received during the Preference Period.

16.     While Orion was represented by counsel throughout much of this adversary proceeding, its counsel filed an *Unopposed Motion for Leave to Withdraw as Counsel* (Doc. No. 56), which motion was granted by order of the Court on September 20, 2018 (Doc. No. 57).  The Court gave Orion 45 days to obtain new counsel, and did not hold a trial in this proceeding until almost eight months later.  Although the Court provided Orion with ample opportunity, Orion did not obtain new counsel, appear at any subsequent hearings or the trial.

## Conclusions of Law

### *Prima Facie Case of Preferential Transfer under 11 U.S.C. § 547(b)*

17.     Pursuant to 11 U.S.C. § 547(b), Plaintiff may avoid any transfer of an interest of the debtor in property –

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made on or within ninety (90) days before the filing of the petition;

(5) that enables the creditor to receive more than such creditor would receive if –

(A)  the case were a case under Chapter 7 of this title;

(B)  the transfer had not been made;

(C)  such creditor received payment of such debt to the extent provided by the provisions of the Bankruptcy Code.[2]

18.     A [party] seeking to avoid a transfer as a preference under § 547(b) bears the burden of proving the existence of all of the elements of the § 547(b) standard by a preponderance of the evidence.[3]

19.     The Court finds, based on its review of the evidence presented at Trial and the admissions set forth in Orion Answer, that each of the elements of § 547(b) has been established by a preponderance of the evidence.

### *Application to the Instant Case*

**A.       To or for the benefit of a creditor.**

20.     The Court concludes that Plaintiff has established, by a preponderance of the evidence, that the Preferential Payments in question were transfers of the Debtor's property made to a creditor, namely Orion. (Plaintiff's Exh. Nos. 2, 5, 6, 7, 8). Based on the evidence presented at Trial, the Court finds that Orion is a creditor by virtue of the Claim it filed against the Debtor's estate. Further, the Court finds that the Preferential Payments benefitted Defendant by adding cash to its coffers.[4]

21.     The Court further concludes that the first element of a preferential transfer is established by the admissions set forth in Orion's Answer.  Specifically, in its Answer Orion admits that "[o]n one or more occasions during the 90 days prior to the Petition Date . . . the Debtor transferred, or caused or allowed to be transferred, an interest in its property in the aggregate

amount of $1,110,000.00 directly to or for the benefit of Defendant." (Plaintiff's Exh. No. 1, para. 11.).

     **B**.    **For or on account of an antecedent debt owed by the debtor before such transfer is made**.

     22.    The Court concludes that Plaintiff proved by a preponderance of the evidence that the Preferential Payments were made on account of an antecedent debt. Specifically, the Court finds that the Preferential Payments made by Bunkers to Orion during the Preference Period constituted payments on account of the balance owed under the Lift Agreement, which balance accumulated antecedent to the Preferential Payments.

     23.    At Trial, Plaintiff presented evidence that on April 15, 2015, Bunkers incurred a $2,075,000.00 obligation, which obligation was due to be paid to Orion on or before June 14, 2015. (Plaintiff's Exh. Nos. 3, 4 and 8). Plaintiff presented sufficient evidence that the debt incurred on April 15, 2015, was not timely paid on June 14, 2015. Instead, the evidence supports a finding that Bunkers trickled in payments to Orion during the period beginning on June 17, 2015 and ending on July 16, 2015, which payments were all made after the due date called for under the Lift Agreement. (Plaintiff's Exh. Nos. 2, 5, 6, 7 and 8). Accordingly, the Court concludes that the $1,110,000 paid by Bunkers to Orion during the Preference Period constituted payments made on account of debt antecedent to the transfers. The Court further finds that in the Answer, Orion admitted that the Preference Payments were for, or on account of, an antecedent debt owed by the Debtor to the Defendant before the transfer was made. (Plaintiff's Exh. No. 1, para. 15). In sum, the evidence presented by Plaintiff and Defendant's own admissions establish, by a preponderance of the evidence, that the Preferential Payments were made on account of an antecedent debt owed by the Debtor before the transfer was made.

C.    **Made while the debtor was insolvent**.

24.    On the question of insolvency, Plaintiff is aided by 11 U.S.C. § 547(f) which provides that a debtor is presumed to be insolvent on and during the 90-day period preceding the filing of the petition.[5]  Federal Rule of Evidence 301 defines the presumption as follows:

> In a civil case, unless a federal statute or these rules provide otherwise, the party against whom a presumption is directed has the burden of producing evidence to rebut the presumption. But this rule does not shift the burden of persuasion, which remains on the party who had it originally.

25.    Therefore, the presumption requires the creditor to introduce evidence to rebut the presumption of insolvency although the burden of proof remains with the debtor who must prove each element of a preference action by a preponderance of the evidence.[6]

26.    At the Trial, Orion did not present any evidence contradicting Plaintiff's evidence or otherwise rebutting the presumption of insolvency. On the other hand, Plaintiff introduced evidence of Debtor's insolvency in the form of balance sheets for the period of May 2015 through August 2015. (Plaintiff's Exh. No. 9, 10, 11, 12). These balance sheets reflect liabilities that exceed assets for every month during the Preference Period. Plaintiff also proffered the testimony of Mr. Morrison in respect of the figures reflected on Debtor's schedules. The schedules, which were executed under the penalty of perjury by Debtor's president and CEO, Mr. John Canal, reflect that liabilities of the Debtor in the amount of $36,067,012.40 exceeded assets in the amount of $23,662,121.50. The Court further accepts Mr. Morrison's testimony and finds that the Debtor's schedules, which were filed at (Doc. No. 59) in the Bankruptcy Case, and the balance sheets which were admitted into evidence at Trial without objection, support a finding that the Debtor was insolvent throughout the 90-day period before the Petition Date.

**D.    Made on or within ninety days before the date of the filing of the petition**.

27.    The Court finds that Bunkers paid Orion a total of $1,110,000.00 on account of the Lift Agreement during the Preference Period. This fact is undisputed and was admitted by Orion in its Answer. (Plaintiff's Exh. No. 1, para. 2 and 11). Plaintiff's exhibits, which were admitted into evidence at Trial without objection, also support the Court's conclusion that Bunker paid Orion $1,110,000.00 during the Preference Period. (Plaintiff's Exh. Nos. 2, 5, 6, and 7).

**E.    That enables such creditor to receive more than such creditor would receive if the case were a case under Chapter 7 of this title**.

28.    The Court finds that the payments made to Orion during the Preference Period enabled Defendant to receive more than it would have received in a Chapter 7 case had such payments not been made. During the Preference Period, Orion received $1,110,000.00. Orion did not introduce any evidence disputing this figure. Plaintiff, on the other hand, introduced evidence that Orion received $1,100,000.00 on a $2,122,815.00 claim, a return of 52%. Plaintiff also introduced evidence that on its best day, Orion would receive a 3.00-4.00% return on its Claim following a liquidation of the Debtor's assets. (Plaintiff's Exh. No. 14). Therefore, the Court finds that Plaintiff has brought forward sufficient evidence to prove by a preponderance of the evidence that the Preference Payments remitted by Bunkers to Orion enabled Defendant to receive more than it would have received in a case under Chapter 7 of the Bankruptcy Code. With this last element satisfied, Plaintiff has brought forward sufficient evidence satisfying all five requirements of § 547(b) by a preponderance of the evidence.

**F.    Defendant's affirmative defenses to avoidance under 11 U.S.C. § 547(c)**.

29.    A trustee may not avoid a transfer of a debtor's property even if the transfer was preferential under § 547(b) if a creditor can establish that the transfer fits into one of the exceptions to avoidance of a preferential transfer found in § 547(c).[7]

30.     Because the exceptions found in § 547(c) function as affirmative defenses, a creditor seeking exception to avoidance bears the burden of proving their application to a case by a preponderance of the evidence.[8] In its Answer, Orion attempted to assert two of the affirmative defenses found in § 547(c): (i) the new value defense found at § 547(c)(1), and the ordinary course of business defense found at § 547(c)(2). At trial, Orion failed to present any evidence in support of its affirmative defenses.

31.     Accordingly, the Court finds that Orion failed to prove its "new value" and "ordinary course of business" defenses by a preponderance of the evidence.  And even if it had brought forth evidence, it is clear that the Preference Payments were late and, thus, not made in the ordinary course of business or financial affairs of Bunkers and Orion and were not made according to ordinary business terms. The fact the payments at issue were not preferential within the meaning of § 547(b) but also late makes it difficult to show that they were made in the ordinary course of business.[9]

32.     Nor is there any evidence to support a finding that the Preference Payments were a "contemporaneous exchange for new value given to the debtor" under the meaning of § 547(c)(1). In fact, the evidence presented by Plaintiff shows quite the opposite, as nothing of value was given to Bunkers in exchange for the Preference Payments. (Plaintiff's Exh. Nos. 2, 6 and 7).

33.     In sum, the Preference Payments constitute preferential transfers of the Debtor's assets under § 547(b). Orion has failed to present any evidence that the Preference Payments fit into one of the exceptions to avoidance of a preferential transfer found in § 547(c). Accordingly, judgment will be entered in Plaintiff's favor with respect to Counts One and Two of the Complaint and Plaintiff shall be entitled to recover the amount of the Preferential Payments ($1,110,000.00). Further, because Orion has not returned the Preference Payments to the liquidating agent, judgment

will be entered in favor of Plaintiff with respect to Count Three of the Complaint and Orion's claim

will be disallowed. 11 U.S.C. § 502(d).

34.     The Court will enter a separate judgment in accordance with these Findings of Fact

and Conclusions of Law.


Attorney Daniel A. Velasquez is directed to serve a copy of this order on interested parties who do
not receive service by CM/ECF and file a proof of service within three days of entry of the order.

---

[1] Jointly-administered cases: Bunkers International, LLC, Case No: 6:15-bk-7397-CCJ; Americas Bunkering, LLC, Case No: 6:15-bk-7400-CCJ; Atlantic Gulf Bunkering, LLC, Case No: 6:15-bk-7402-CCJ; Dolphin Marine Fuels, LLC, Case No: 6:15-bk-7404-CCJ.

[2] 11 U.S.C. § 547(b).

[3] *In re Jotan, Inc*., 264 B.R. 735, 747 (Bankr. M.D. Fla. 2001) (citing *Grant v. Sun Bank/North Central Florida* (*In re Thurman Construction, Inc*.), 189 B.R. 1004, 1009 (Bankr. M.D. Fla. 1995).

[4] *See Jotan*, 264 B.R. at 747, fn. 5. (wherein the Court held that receipt of the preferential payments benefitted the defendant by adding cash to its coffers, and further held that the "benefit" inquiry does not require it to delve into whether the defendant benefitted unfairly from the transfers it received as that question is reserved for the "Chapter 7 analysis" set forth in 11 U.S.C. § 547(b)(5)).

[5] *See* 11 U.S.C. § 547(f).

[6] *In re Pembroke Development Corp*., 122 B.R. 610, 612 (Bankr. S.D. Fla. 1991).

[7] *See Jotan*, 264 B.R. at 750.

[8] *See Official Unsecured Creditors' Committee v. Airport Aviation Services, Inc*. (*In re Arrow Air*), 940 F.2d 1463, 1465 (11th Cir. 1991).

[9] *See In re Globe Manufacturing Corp*., 567 F.3d 1291, 1298 (11th Cir. 2009) (*quoting In re Craig Oil*, 785 F.2d 1563, 1567-68 (11th Cir. 1986) ("[U]ntimely payments are more likely to be considered outside the ordinary course of business and avoidable as preferences.")).